UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MELISSA COSSABOOM f/k/a MELISSA
COLLINS, ANN ADAIR HATCH, and
JESSICA PETTRY, on behalf of themselves and
all others similarly situated,

       Plaintiffs,

 -against-

NVR, INC. and NVR MORTGAGE FINANCE,
INC.,

       Defendants.

Case No. 9:21-cv-80627-AMC

## PLAINTIFFS' RENEWED MOTION FOR FLSA CONDITIONAL CERTIFICATION AND ISSUANCE OF COURT-AUTHORIZED NOTICE

Plaintiffs Melissa Cossaboom f/k/a Melissa Collins ("Cossaboom"), Ann Adair Hatch ("Hatch"), and Jessica Pettry, ECF No. 15 ("Pettry"), and Opt-in Plaintiffs Faran Gaines, ECF No. 22 ("Gaines"); Christopher Gates, ECF No. 22 ("Gates"); Paola Leon, ECF No. 49 ("Leon"); John Carlisle, ECF No. 53 ("Carlisle"), along with others similarly situated (collectively, "Plaintiffs"), request the Court to conditionally certify two separate collectives and authorize notice, pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and state:

### INTRODUCTION

Plaintiffs are Loan Officers and Loan Processors who worked for Defendants NVR, Inc. and NVR Mortgage Finance Inc. (collectively, "Defendants") throughout Florida. Plaintiffs assert that Defendants intentionally denied them overtime compensation in violation of the FLSA. Plaintiffs seek conditional certification of two separate FLSA Collectives:

> All Loan Officers and employees in similar positions who are or were employed by NVR, Inc. and/or NVR Mortgage Finance, Inc. in Florida at any time from March 31, 2018 through the present and beyond (the "Loan Officer Collective").[1]

---

[1]   Notice to potential plaintiffs based on a three-year statute of limitations is appropriate. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Maar v. Beall's, Inc.*, 2016 U.S. Dist. LEXIS 203198, at *19 (S.D. Fla. Nov. 23, 2016); *Collado v. J. & G. Transp., Inc.*, 2014 U.S. Dist. LEXIS 152441, at *12, 16 (S.D. Fla. Oct. 23, 2014); *Sealy v. Keiser Sch., Inc.*, 2011 U.S. Dist. LEXIS 152369, at *12 (S.D. Fla. Nov. 8, 2011). In addition, the "look back" period for the three-year statute of limitations should be the filing of the Complaint. *Carmody v. Florida Ctr. For Recovery, Inc.*, 2006 U.S. Dist. LEXIS 81640, at **3-4 (S.D. Fla. Nov. 7, 2006) (authorizing plaintiffs to give notice to employees employed during the "three year time period" prior to the

All Loan Processors and employees in similar positions who are or were employed by NVR, Inc. and/or NVR Mortgage Finance, Inc. in Florida at any time from April 9, 2018[2] through the present and beyond (the "Loan Processor Collective," together with the Loan Officer Collective the "FLSA Collectives").

Plaintiffs also seek authorization to send notice to members of the FLSA Collectives to provide them the opportunity to join. 29 U.S.C. § 216(b). Notice is critical for members of the FLSA Collectives' to receive as soon as practicable, as their statutes of limitations continue to run until they opt into this matter. 29 U.S.C. § 256(b).

Conditional certification is warranted here, as Plaintiffs' evidence demonstrates that Loan Officers all worked in similar positions, were classified and paid the same way, and were all victims of Defendants' common policy and practice prohibiting them from recording all of the overtime hours (that is, hours over 40 in a work week) that Defendants expected and directed them to work. Plaintiffs' evidence demonstrates the same for Loan Processors. For both Collectives, the record presented far exceeds that which is necessary for conditional certification, particularly at this early stage of the proceedings. *See infra*.

Based upon the record, the Court should follow the overwhelming precedent in this District and throughout the Eleventh Circuit in comparable cases and conditionally certify both of the FLSA Collectives and authorize notice to the members of each. *Devries v. Morgan Stanley & Co. LLC*, 2014 U.S. Dist. LEXIS 15862, at *15-16 (S.D. Fla. Feb. 7, 2014) (conditional certification granted, based upon declarations stating defendant had a policy of discouraging employees from reporting more than 40 hours or all of their overtime); *Lara v. G&E Fla. Contrs., LLC*, 2015 U.S. Dist. LEXIS 105981, at **14-15, *19 (S.D. Fla. July 21, 2015) (conditionally certifying FLSA collective where plaintiffs alleged that defendant had a policy of paying for some, but not all, hours worked over 40 in a work week); *see also Jackson v. Fannie Mae*, 181 F. Supp. 3d 1044, 1048-49 (N.D. Ga. 2016) (conditionally certifying collective where plaintiffs alleged that defendant failed

---

filing of the lawsuit); *see also Ululaulani Hu v. Windhaven Ins. Co*., 2016 U.S. Dist. LEXIS 195364, at *15 (M.D. Fla. Feb. 16, 2016).

[2]      Plaintiffs' Second Amended Collective Action Complaint ("SAC") has a typo reflecting this date as April 9, 2021, rather than April 9, 2018 as otherwise articulated throughout the SAC. *See* ECF No. 65; *see also* SAC at ¶¶ 19, 59, 98, 111. The Parties have stipulated to amending this scrivener's error by interlineation, and the Court "so ordered" same. *See* ECF Nos. 65, 66.

to pay for hours worked over 40 in a work week when it knew or should have known that quotas could not be met in 40 hours); *Eleazier Banks v. Birmingham Bd. of Educ.*, 2014 U.S. Dist. LEXIS 203888, at \*\*7-10, \*\*14-15 (N.D. Ala. Sept. 2, 2014) (conditional certification granted where employees alleged a policy where defendants failed to compensation them for hours over 40 because such hours were not permitted to be recorded or were removed from time records); *Whineglass v. Smith*, 2012 U.S. Dist. LEXIS 175511, at \*\*12-14 (M.D. Fla. Nov. 14, 2012) (conditionally certifying FLSA collective of workers who alleged common policy of not allowing employees to report over 40 hours); *Zulauf v. Amerisave Mortg. Corp.*, 11 Civ. 1784, 2011 U.S. Dist. LEXIS 156699, at \*\*69-70 (N.D. Ga. Nov. 23, 2011) (same); *Hill v. Muscogee County Sch. Dist.*, 2005 U.S. Dist. LEXIS 35725, at \*12-14 (M.D. GA. Dec. 20, 2005) (same).

## I.      PROCEDURAL HISTORY

On March 31, 2021, Plaintiffs filed this collective action on behalf of all Loan Officers nationwide, seeking unpaid overtime compensation pursuant to the FLSA.  ECF No. 1.  On April 9, 2021, Plaintiffs filed an Amended Complaint, expanding the definition of the putative collective to include Loan Processors employed at all of Defendants' locations nationwide.  ECF No. 5.

On May 4, 2021, Defendants filed a Motion to Dismiss the Amended Complaint ("Motion to Dismiss").  ECF No. 16.  Therein, Defendants claimed that the Court lacked jurisdiction over the non-Florida resident Named Plaintiff Joel Hughes ("Hughes"), and other, non-Florida resident Opt-In Plaintiffs.  *Id*. at 1.  The Motion to Dismiss also challenged the joint employment allegations of the Amended Complaint.  *Id*.  Plaintiffs opposed on all points.  ECF No. 26.

On June 8, 2021, Plaintiffs filed their first Motion for FLSA Conditional Certification ("First Cond. Cert. Motion").  ECF No. 38.  In that First Cond. Cert. Motion, Plaintiffs sought conditional certification of an FLSA collective comprised of similarly situated Loan Officers and Loan Processors.  *Id*. at 1.  Defendants opposed conditional certification based on, *inter alia*, the fact that two positions – Loan Officers and Loan Processors – were included in one proposed FLSA collective, as well as challenges to the common policy asserted by Plaintiffs.  ECF No. 42.

On September 1, 2021, the Court entered an Omnibus Order granting the Motion to Dismiss, in part.  ECF No. 60.  The Court dismissed Hughes, finding that it lacked jurisdiction over Plaintiffs not residing in Florida.  *Id*. at 9-10.  In addition, the Court required Plaintiffs to supplement their joint employer allegations.  *Id*. at 10.  Finally, the Court denied, without prejudice, Plaintiffs' First Cond. Cert. Motion.  *Id*.  The Court indicated that Plaintiffs could refile

their conditional certification request to reflect the Florida-only scope of the case occasioned by the Court's ruling on the Motion to Dismiss. *Id.*

Pursuant to the Court's Sept. 1, 2021 Order, Plaintiffs filed their SAC on Sept. 15, 2021. ECF No. 62.  Consistent with the Court's Order, the SAC limited the collective action to the State of Florida and dropped Named Plaintiff Hughes who resides outside the State of Florida, replacing him with Named Plaintiff Jessica Pettry, who worked as a Loan Processor in Florida. *Id.* at ¶ 16. The SAC also further strengthened the joint employment allegations and further elaborated upon the "willfulness" allegations, both of which are further supported by the evidence submitted in support of the instant Motion. *See, e.g.*, *id.* at ¶¶ 16, 27-48; *see also* ¶¶ 62-71, 75-78.  Finally, although Plaintiffs dispute the need to separately define each collective group given the significant similarly in job duties and relevant treatment of both Loan Officers and Loan Processors, the SAC addressed Defendant's concerns by separately defining the Loan Officer Collective and Loan Processor Collective.  Defendants filed their Answer on Sept. 29, 2021.  ECF No. 63 ("Answer").

To date, the parties have engaged in limited discovery, primarily focused on common policies and the Plaintiffs who have joined thus far.  To date, no depositions have taken place.

## II.  FACTS

### A.  The Parties

#### 1.  Defendants

Defendants are homebuilders which also provide home mortgages to their homebuyers. SAC at ¶¶ 22, 23; Answer at ¶ 22.  According to Defendants, "NVR [INC.] is a homebuilder with operations in fourteen states", including Florida, and "NVRM[3] is a mortgage company that serves the financial needs of individuals purchasing NVR-built homes."  ECF No. 42 at 3.  Defendants share the same corporate headquarters in Reston, VA.  Answer at ¶ 21.  Per Defendants, NVRM operates three branches in Florida: Orlando, Tampa, and West Palm Beach.[4]  ECF No. 42 at 3.

#### 2.  Plaintiffs

Plaintiffs worked for Defendants as Loan Officers and Loan Processors at all of Defendants' locations throughout Florida:

---

[3]      NVR Mortgage Finance, Inc.
[4]      Defendants also operate a satellite office in Jacksonville.  ECF No. 42 at 3.

| Name | Job Title | Location | Dates | Citation |
|---|---|---|---|---|
| Melissa Cossaboom | Loan Officer | Tampa, FL | 12/2017-8/2018 | Cossaboom Decl.[5] ¶ 1. |
| Ann Adair Hatch | Loan Officer | West Palm Beach, FL | 6/2017-8/2019 | Hatch Decl. ¶ 1. |
| John Carlisle | Loan Officer | Orlando, FL | 4/2017-4/2021 | Carlisle Decl. ¶ 1. |
| Jessica Pettry | Loan Processor | Tampa, Orlando, FL | 7/2017-9/2019 | Pettry Decl. ¶ 1. |
| Faran Gaines | Loan Processor | Orlando, FL | 8/2018-9/2019 | Gaines Decl. ¶ 1. |
| Christopher Gates | Loan Processor | Orlando, FL | 4/2018-3/2020 | Gates Decl. ¶ 1. |
| Paolo Leon | Loan Processor | Orlando, FL | 10/2019-8/2020 | Leon Rogs.[6] at 2. |

Plaintiffs allege that Defendants engaged in a pattern and practice of not paying them for all their time worked, denying them and those similarly situated overtime pay for hours worked over 40 in a workweek, regardless of the Florida location where they worked for Defendants.  SAC at ¶¶ 2, 60, 66, 67, 69-71, 73-78, 81, 83, 89, 95, 99, 100, 102, 108, 112, 113.

### B. Plaintiffs and the Members of the Respective FLSA Collectives Are Similar Regarding the Terms and Conditions of their Employment

#### 1. Loan Officers and Loan Processors, Respectively, are Similar in their Job Duties, Compensation, and Classification, And Defendants Use a Common Job Description for Each Position.

Although Loan Officers are the first point of contact for new home buyers seeking a loan to purchase one of Defendants' properties, at base Loan Officers and Loan Processors perform significantly similar duties in their effort to sell home loans and support the sale of same: speaking with home buyers to collect information required for a home loan, collecting required documents, and submitting the loan paperwork to underwriting for approval.[7, 8]  Answer at ¶ 55 ("Defendants

---

[5]     Declarations are cited by the Plaintiff's last name, for example, "Cossaboom Decl."

[6]     Exhibit 1, Paola Leon's Responses to Interrogatories (hereinafter, "Leon Rogs.").

[7]     **Loan Officers**: Cossaboom Decl. ¶ 4; Hatch Decl. ¶ 4; Carlisle Decl. ¶ 4; *see also* Tapscott Decl. ¶ 4; Gardner Decl. ¶ 4; Jenkins Decl. ¶ 4.  **Loan Processors**: Pettry Decl. ¶ 3; Gaines Decl. ¶ 3; Gates Decl. ¶ 3; Leon Rogs. at 1; *see also* Hughes Decl. ¶ 3.

[8]     Plaintiffs' reliance on sworn testimony of Plaintiff Loan Officers in support of Plaintiff Loan Processors, and vice versa, is entirely permissible. *See Russo v. BellSouth Telecomms., Inc.*, 2009 U.S. Dist. LEXIS 20552, at *23 (N.D. Ga. Feb. 10, 2009) (allowing testimony of declarants outside of statute of limitations in support of conditional certification, finding such testimony to "be relevant to show such a practice or policy, even if the individual declarants are barred from proceeding" with the case).  Likewise, sworn statements of non-Florida Loan Officers and Loan Processors in support of this Motion speak to Defendants' companywide application of their corporately-derived policies and practices, and similar treatment of its Loan Offices and Loan Processors nationwide, including throughout Florida as attested to by the Florida-based Plaintiffs.

admit that Plaintiffs sold and/or facilitated the sale of home financing "), ¶ 56 ("Defendants admit that Plaintiffs' duties included working with NVRM's customers to collect required documents and to submit loan applications to NVRM's underwriting department for approval."); *see also* (Collection of identical Loan Officer Descriptions from around the Florida Ex. 2; Collection of identical Loan Processor Description from around Florida), Ex. 3.) Loan Officers and Loan Processors primarily performed this work from Defendants' offices and also from home.[9]  Answer at ¶ 54 ("Defendants state that Plaintiffs performed their work from inside Defendant NVRM's locations as well as remotely from their homes and other locations").

Defendants classify and pay all Loan Officers and Loan Processors as non-exempt, overtime wage eligible.[10]  Answer at ¶ 59 (admitting Plaintiffs are classified overtime eligible).

Defendants promulgate the same job description for all Loan Officers in Florida. Ex. 2.[11] Defendants do the same for all Loan Processors in Florida. Ex. 3.  *See supra* n. 11.

Loan Officers and Loan Processors all received similar training, frequently together.[12]

### 2. Loan Officers and Loan Processors Similarly Work Unpaid Overtime.

Defendants schedule Loan Officers and Loan Processors to work 40 hours per week.[13] However, Loan Officers and Loan Processors regularly work more than 40 hours in a workweek,

---

[9]      **Loan Officers**: Cossaboom Decl. ¶¶ 8-9; Hatch Decl. ¶¶ 10-11; Carlisle Decl. ¶¶ 8-9; *see also* Tapscott Decl. ¶¶ 9-10; Gardner Decl. ¶¶ 9-10; Jenkins Decl. ¶¶ 9-10.  **Loan Processors**: Pettry Decl. ¶¶ 8-9; Gaines Decl. ¶¶ 7-10; Gates Decl. ¶¶ 7-8; Leon Rogs. at 1; *see also* Hughes Decl. ¶¶ 7-10.
[10]     **Loan Officers**: Cossaboom Decl. ¶ 2; Hatch Decl. ¶ 2; Carlisle Decl. ¶ 2; *see also* Tapscott Decl. ¶ 2; Gardner Decl. ¶ 2; Jenkins Decl. ¶ 2.  **Loan Processors**: Pettry Decl. ¶ 2; Gaines Decl. ¶ 2; Gates Decl. ¶ 2; *see also* Hughes Decl. ¶ 2.
[11]     *See also* Ex. 4 (collection of identical Loan Officer Descriptions from around the country) and Ex. 5 (collection of identical Loan Processor Description from around the country), mirroring verbatim the Florida Loan Officer and Loan Processor job descriptions at Exs. 2 and 3, respectively, further demonstrating Defendants' similar treatment of Loan Officers and Loan Processors nationwide, including throughout Florida.
[12]     **Loan Officers**: Cossaboom Decl. ¶ 5; Hatch Decl. ¶¶ 5-6; Carlisle Decl. ¶ 5; *see also* Tapscott Decl. ¶ 5; Gardner Decl. ¶ 5; Jenkins Decl. ¶¶ 5-6.  **Loan Processors**: Pettry Decl. ¶¶ 4-5; Gaines Decl. ¶ 4; Gates Decl. ¶ 4; *see also* Hughes Decl. ¶ 7.
[13]     **Loan Officers**: Cossaboom Decl. ¶ 6; Hatch Decl. ¶ 8; Carlisle Decl. ¶ 6; *see also* Tapscott Decl. ¶ 6; Gardner Decl. ¶ 6; Jenkins Decl. ¶ 7.  **Loan Processors**: Pettry Decl. ¶ 6; Gaines Decl. ¶ 5; Gates Decl. ¶ 5; Leon Rogs. at 1; *see also* Hughes Decl. ¶ 5.

with Defendants' knowledge and at Defendants' direction in order to complete their job responsibilities.[14]  SAC at ¶¶ 62-71, 75-78.

The nature and demands of the job require Loan Officers and Loan Processors to work more than 40 hours in many workweeks.[15]  SAC at ¶¶ 65-71, 75-78.  After the customer's initial discussion with the Loan Officer regarding their loans, Loan Officers and Loan Processors together are responsible for connecting with home buyers at the buyer's convenience throughout the day and evening to collect information and documentation necessary to process their loan.[16]  As a result, not only do Loan Officers and Loan Processors work overtime hours from Defendants' offices, but they also regularly work from home both before and after their shifts on weekdays and weekends to service Defendants' customers.[17]  Answer at ¶ 54 (Defendants admit that Plaintiffs also worked remotely from home).  In fact, Defendants provide Loan Officers and Loan Processors with company-issued laptop computers and/or smartphones for this very purpose.[18]  In addition to

---

[14]      **Loan Officers**: Cossaboom Decl. ¶¶ 7-11 (estimating 60 hours or more per week); Hatch Decl. ¶¶ 9-13 (60 hours); Carlisle Decl. ¶¶ 7-11; *see also* Tapscott Decl. ¶¶ 7-12 (50-60 hours); Gardner Decl. ¶¶ 7-11 (60-65 hours); Jenkins Decl. ¶¶ 8-12 (60 hours).  **Loan Processors**: Pettry Decl. ¶¶ 7-11 (45 to 50 hours); Gaines Decl. ¶¶ 7-10 (42 to 45 hours); Gates Decl. ¶¶ 6-10 (45-55 hours); Leon Rogs. at 1-2 (50 hours); *see also* Hughes Decl. ¶¶ 7-10 (45 hours).

[15]      **Loan Officers**: Cossaboom Decl. ¶¶ 11, 18 ("performance demands NVR placed on Loan [Officers and Loan Processors] required that I perform work outside of my scheduled 40-hour workweek"); Hatch Decl. ¶¶ 12 (citing August 7, 2019 email, attached thereto, acknowledging Hatch's "contribution to [the] team" by "stay[ing] until around 7 pm through [an] entire contract to make sure everything was moving forward"), 13, 19; Carlisle Decl. ¶¶ 11, 18; *see also* Tapscott Decl. ¶¶ 12, 18; Gardner Decl. ¶ 11, 18; Jenkins Decl. ¶¶ 12, 19.  **Loan Processors**: Pettry Decl. ¶¶ 11, 19; Gaines Decl. ¶¶ 10, 16; Gates Dec. ¶¶ 10, 18; Leon Rogs. at 1; *see also* Hughes Decl. ¶¶ 10, 16.

[16]      **Loan Officers**: Cossaboom Decl. ¶ 9 ("I often had to work from home after regular business hours to facilitate NVR's customers' schedules"); Hatch Decl. ¶¶ 11-13 (citing July 10, 2018 email, attached thereto, "in which one of NVR's customers wrote to [Defendants] to show her appreciation for the '2 hour phone call after hours' in which [Hatch] 'time to address all of [her] questions."); Carlisle Decl. ¶ 9; *see also* Tapscott Decl. ¶ 10; Gardner Decl. ¶ 9; Jenkins Decl. ¶ 10.  **Loan Processors**: Pettry Decl. ¶ 9; Gaines Decl. ¶ 8; Gates Decl. ¶ 8; Leon Rogs. at 1; *see also* Hughes Decl. ¶ 8.

[17]      **Loan Officers**: Cossaboom Decl. ¶¶ 8-11; Hatch Decl. ¶¶ 10-13; Carlisle Decl. ¶¶ 8-11; *see also* Tapscott Decl. ¶¶ 9-12; Gardner Decl. ¶¶ 8-11; Jenkins Decl. ¶¶ 8-12.  **Loan Processors**: Pettry Decl. ¶¶ 8-11; Gaines Decl. ¶¶ 7-10; Gates Decl. ¶¶ 7-10; Leon Rogs. at 1-2; *see also* Hughes Decl. ¶¶ 8-10.

[18]      **Loan Officers**: Cossaboom Decl. ¶ 9; Hatch Decl. ¶¶ 10-12; Carlisle Decl. ¶ 9; *see also* Tapscott Decl. ¶ 10; Gardner Decl. ¶ 9; Jenkins Decl. ¶ 10.  **Loan Processors**: Pettry Decl. ¶ 9; Gaines Decl. ¶ 8; Gates Decl. ¶ 8; Leon Rogs. at 1; *see also* Hughes Decl. ¶ 9.

Defendants' customers, Defendants themselves interact directly with Loan Officers and Loan Processors by phone, text, email, and video calls for work purposes after hours and on weekends.[19]

### 3. Loan Officers and Loan Processors Are All Subject to Defendants' Unlawful Policy and Practice of Not Paying All Overtime Hours Worked.

While Loan Officers and Loan Processors regularly work over 40 hours per week, Defendants maintain a common policy and practice of prohibiting them from recording all their overtime hours worked.[20]  This policy flies in the face of Defendants' written policy for recording hours worked.[21]  (*See* Written Policy, Ex. 6.) Although Defendants would, on occasion, pre-approve overtime on a limited basis, the number of hours Defendants pre-approved was routinely less than the actual number of overtime hours worked.[22]  Because Defendants' policy and practice

---

[19]   **Loan Officers**: Cossaboom Decl. ¶ 10 ("My supervisor [] communicated with me via phone calls, texts and email outside of regularly scheduled work hours regarding work-related matters"); Hatch Decl. ¶ 12; Carlisle Decl. ¶ 10; *see also* Tapscott Decl. ¶ 11; Gardner Decl. ¶ 10; Jenkins Decl. ¶ 11 (citing copies of work-related emails, attached thereto, between Jenkins and her supervisors reflecting alleged unpaid overtime work). **Loan Processors**: Pettry Decl. ¶ 10; Gaines Decl. ¶ 9; Gates Decl. ¶ 9 (citing copies of text message, attached thereto, between Gates and his supervisors "which were sent beyond [his] scheduled work hours [and] for which [he] do[es] not believe [he] was paid"); Leon Rogs. at 1; *see also* Hughes Decl. ¶¶ 9, 12 (citing work-related text message, attached thereto, sent afterhours between Hughes and his supervisors "amount[ing] to uncompensated overtime hours").

[20]   **Loan Officers**: Cossaboom Decl. ¶¶ 12, 15; Hatch Decl. ¶¶ 14, 16; Carlisle Decl. ¶¶ 12, 14; *see also* Tapscott Decl. ¶¶ 13, 15; Gardner Decl. ¶¶ 12, 14; Jenkins Decl. ¶¶ 13, 16. **Loan Processors**: Pettry Decl. ¶¶ 12, 16; Gaines Decl. ¶¶ 11, 15; Gates Decl. ¶¶ 11, 15; Leon Rogs. at 1-2; *see also* Hughes Decl. ¶¶ 11, 13.

[21]   **Loan Officers**: Cossaboom Decl. ¶¶ 12-18 (except for "occasional circumstances [where] overtime was pre-approved, NVR prohibited [] recording more than 40 hours.  In fact . . . my supervisor [] specifically explained to me that I should not record more than 40 hours on my timesheet,"); Hatch Decl. ¶¶ 14-19 ("NVR maintained labor budgets to control the amount it paid employees. As a result, it was NVR's policy to prohibit Loan [Officers and Processors] from recording overtime hours without approval."); Carlisle Decl. ¶¶ 12-18; *see also* Tapscott Decl. ¶¶ 13-18; Gardner Decl. ¶¶ 12-18; Jenkins Decl. ¶¶ 12-19 ("off-the-clock overtime hours were necessary to meet the demands of my job"). **Loan Processors**: Pettry Decl. ¶¶ 12-19 (supervisor knew they were working overtime hours and "told me and other Loan [Officers and Processors] to just simply not record that time"); Gaines Decl. ¶¶ 11-16; Gates Decl. ¶¶ 11-18 (supervisor "made it clear that I had to complete these work assignments off-the-clock"); Leon Rogs. at 2; *see also* Hughes Decl. ¶¶ 11-16.

[22]   **Loan Officers**: Cossaboom Decl. ¶ 16 ("Approval for overtime was rarely granted. Even on those rare circumstances [], it was limited and insufficient to cover all of the overtime hours I actually needed to work, resulting in continued, unrecorded and uncompensated overtime hours");

is to refuse to allow Loan Officers and Loan Processors to record more than 40 hours per week despite their working more than 40 hours per week, Loan Officers and Loan Processors regularly performed off-the-clock work to complete their mandatory job duties, resulting in unpaid overtime hours worked.[23]  This policy is a corporate directive applicable to all Florida locations.[24]

### 4.  Defendants' Knowledge of Plaintiffs' Off-the-Clock Work.

Defendants know that Loan Officers and Loan Processors regularly work overtime because they assign the in-office tasks which result in overtime, as well as contact Loan Officers and Loan Processors regularly after hours when they are off-the-clock, on company-owned laptops and cell phones Defendants themselves provided for this very purpose.[25]  Nonetheless, Defendants' policy proscribed Loan Officers and Loan Processors from recording these overtime hours so that

---

Hatch Decl. ¶ 17; Carlisle Decl. ¶ 16; *see also* Tapscott Decl. ¶ 16; Gardner Decl. ¶ 16; Jenkins Decl. ¶ 17. **Loan Processors**: Pettry Decl. ¶ 17; Gaines Decl. ¶ 14; Gates Decl. ¶ 16; Leon Rogs. at 1-2; *see also* Hughes Decl. ¶ 14.

[23]     **Loan Officers**: Cossaboom Decl. ¶¶ 14-18 ("Because of NVR's policy of prohibiting the recording of overtime hours absent rare circumstances, I frequently submitted time sheets with eight-hour blocks of time for the days on which I worked, regardless of the hours I actually worked. . . . On occasion I even entered time in for dates in the future, yet to be worked. . . . [I did this because] I believed that I would have been reprimanded or otherwise disciplined if I recorded all the hours I worked[.]"); Hatch Decl. ¶¶ 15-19; Carlisle Decl. ¶¶ 13-18; *see also* Tapscott Decl. ¶¶ 14-18; Gardner Decl. ¶¶ 14-18; Jenkins Decl. ¶¶ 15-19. **Loan Processors**: Pettry Decl. ¶¶ 13-19 ("[M]y time records generally reflected only 40 hours of work per week despite working more hours than I recorded. . . . [My supervisor] advised that I should try not to record the same amount of total work time each day because if my time records were ever to be audited, consistent entries each day would not be believable"), ¶ 15 (citing a planner, attached thereto, that Pettry maintained reflecting hours worked in the office, including off the clock and uncompensated overtime hours, but excluding an additional "approximately five hours or more per week [worked] from home," also amounting to off-the-clock, unpaid overtime wages); Gaines Decl. ¶¶ 11-16; Gates Decl. ¶¶ 12-18 ("my supervisor[] rejected my timesheet and instructed me to adjust my recorded hours so they would fall under 40 hours per week"); Leon Rogs. at 1-2; *see also* Hughes Decl. ¶¶ 11-16.

[24]     **Loan Officers**: Cossaboom Decl. ¶¶ 12, 15, 20; Hatch Decl. ¶¶ 14, 16, 21; Carlisle Decl. ¶¶ 12, 14, 20; *see also* Tapscott Decl. ¶¶ 13, 15, 20; Gardner Decl. ¶¶ 12, 14, 20; Jenkins Decl. ¶¶ 13, 16, 21. **Loan Processors**: Pettry Decl. ¶¶ 12, 16, 21; Gaines Decl. ¶¶ 11, 15, 18; Gates Decl. ¶¶ 11, 15, 20; Leon Rogs. at 2; *see also* Hughes Decl. ¶¶ 11, 13, 18.

[25]     **Loan Officers**: Cossaboom Decl. ¶¶ 9-10; Hatch Decl. ¶¶ 11-12; Carlisle Decl. ¶¶ 9-10; *see also* Tapscott Decl. ¶¶ 10-11; Gardner Decl. ¶¶ 9-10; Jenkins Decl. ¶¶ 10-11, 21. **Loan Processors**: Pettry Decl. ¶¶ 9-10; Gaines Decl. ¶¶ 12, 18; Gates Decl. ¶ 8; Leon Rogs. at 1; *see also* Hughes Decl. ¶¶ 8-9.

Defendants could save money and increase profits by not paying their employees the overtime premium required by the FLSA.

In some instances, Loan Officers and Loan Processors complained to Defendants—whether through supervisors or to the CEO himself—about unpaid work.[26]  Even with explicit knowledge that Loan Officers and Loan Processors were not permitted to record all of their overtime hours worked, Defendants' common policy of requiring them to work overtime hours off-the-clock persisted.[27]

### 5. Other Loan Officers and Loan Processors Are Interested in Asserting Their Rights to Overtime.

Beyond the seven Plaintiffs from Florida who have joined to date, other similarly situated Loan Officers and Loan Processors regularly were not paid for all their time worked as a result of Defendants' common policies and practices.[28]  Plaintiffs know this because they have spoken with other Loan Officers and Loan Processors about Defendants' expectations, the work Loan Officers

---

[26]     **Loan Officers**: Carlisle Decl. ¶ 13 (supervisor "rejected" Carlisle's timesheet reflecting overtime work, requiring that he resubmit the timesheet without overtime hours recorded); *see also* Gardner Decl. ¶ 13 (in response to his complains, Gardner's supervisor "instructed [him] to only record 40 hours, resulting in Gardner's subsequent complaint to Defendants' CEO, attached thereto, noting that Gardner was "working over 60+ hours a week and being told that no overtime was allowed and to 'just get it done'"); Jenkins Decl. ¶ 14 (despite discussing these circumstances with her supervisor, told Jenkins was told "not to record overtime hours because the time would not be paid"). **Loan Processors**: Pettry Decl. ¶ 14 (after complaining to her supervisors, Pettry was "accused me of being 'inefficient'" and "nothing was [otherwise] done to address the situation or ensure that [she[] was paid for the overtime hours [she] was actually working on a regular basis."); Gates Decl. ¶ 14 (supervisor "told me that I was not eligible to receive overtime pay because the hours were not pre-approved").

[27]     *See* n. 23, 26, *supra*.; Gardner Decl. ¶ 13 (still not paid for all hours worked, despite complaint to Defendants' CEO).

[28]     **Loan Officers**: Cossaboom Decl. ¶¶ 19-20 (identifying three others, employed as either Loan Officers and Processors, who Cossaboom "witnessed performing the same job duties" as herself, who "regularly worked more than 40 hours per workweek and did not receive overtime pay for all the hours that they worked in excess of 40[,]" and with whom Cossaboom discussed Defendants' "policy to no record more than 40 hours on [their] timesheet, regardless of how many hours worked"); Hatch Decl. ¶¶ 20-21 (identifying eight Loan Officers/Loan Processors); Carlisle Decl. ¶¶ 19-20; *see also* Tapscott Decl. ¶¶ 19-20 (identifying five Loan Officers/Processors); Gardner Decl. ¶¶ 19-20 (identifying two Loan Officers); Jenkins Decl. ¶¶ 21-22 (identifying one Loan Officer).  **Loan Processors**: Pettry Decl. ¶¶ 20-21 (identifying eight Loan Processors); Gaines Decl. ¶¶ 17-18 (identifying two Loan Processors); Gates Decl. ¶¶ 19-20 (identifying two Loan Officers/Loan Processors); Leon Rogs. at 1; *see also* Hughes Decl. ¶¶ 17-18 (identifying 12 Loan Officers/Loan Processors).

and Loan Processors performed and the hours they were working, and Defendants' policies and practices that resulted in off-the-clock overtime hours worked.[29]   Based on these conversations, Plaintiffs present evidence that if given notice of this action and the opportunity to join, other similarly situated Loan Officers and Loan Processors would likely come forward to assert their claim for unpaid overtime wages.[30]

## III.   LEGAL STANDARDS FOR CERTIFICATION OF FLSA COLLECTIVE ACTIONS.

### A.   FLSA Collective Actions and Notice.

Congress enacted the FLSA for remedial and humanitarian purposes. *Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597-98(1944). One remedial procedure of the FLSA allows employees to bring a collective action on behalf of themselves and other similarly situated employees. *See* 29 U.S.C. § 216(b); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989).  The purpose of section 216(b) collective actions is to "(1) reduc[e] the burden on plaintiffs through the pooling of resources, and (2) efficiently resolv[e] common issues of law and fact that arise from the same illegal conduct." *Espinoza v. Galardi South Enters.*, 2014 U.S. Dist. LEXIS 150775, at *4 (S.D. Fla. Oct. 23, 2014) (citing (citing *Hoffmann-La Roche,* 493 U.S. at 170) (other citations omitted).  To be bound by the case's outcome, an employee must opt into a collective by filing a written consent with the court. *Albritton v. Cagles, Inc.*, 508 F. 3d 1012 (11th Cir. 2007); *Yarwood v. Majestic Princess Cruises*, 2018 U.S. Dist. LEXIS 237798, at *2 (S.D. Fla. Jan. 31, 2018) (citations omitted).

To facilitate notice to similarly situated employees, district courts have authority to compel defendant-employers to provide the names and addresses of potential plaintiffs. *Hoffmann-La Roche, Inc.*, 493 U.S. at 170-71. This authority includes sending court-authorized notice to potential opt-in plaintiffs regarding the lawsuit and their right to join.  *Id*.  In establishing these procedures, the Supreme Court recognized the benefits of a collective action, which permit:

---

[29]     *See* n. 28, *supra*.

[30]     Moreover, while they are no longer part of this case by virtue of the Court's Order dismissing all non-Florida Plaintiffs from this case, ECF No. 60, the fact remains that a total of 14 Loan Officers and Loan Employees (including the seven Florida Plaintiffs now participating in this matter) were previously part of this case.  ECF No. 54 at 2.  As such, it is undeniable that other Loan Officers and Loan Processors throughout the country, including in Florida, are interested in pursuing their unpaid overtime wage claims against Defendants.

> plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.  These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id.* at 170.  The court's authority to supervise notice derives from the broad discretionary power to manage the process of joining multiple parties in an orderly manner.  *Id.* at 169-72.  Because district court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of the district court to begin its involvement early, at the point of the initial notice.  *Id.*

### B.  The Two-Phase Framework for Certification of FLSA Collectives.

The Eleventh Circuit has endorsed a "two-tiered" approach for managing FLSA collective actions.  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Wright v. Waste Pro United States*, 2020 U.S. Dist. LEXIS 250713, at *4 (S.D. Fla. Dec. 22, 2020); *Mohamed v. Cogint, Inc.*, 2018 U.S. Dist. LEXIS 228046, at *3-4 (S.D. Fla. Aug. 18, 2018); *Yarwood*, 2018 U.S. Dist. LEXIS 237798, at *2.  Under the two-tiered approach, the district court makes an initial determination, based solely upon the pleadings and any presented evidence, as to whether notice of the action should be given to potential collective members, without consideration of the merits of the claim.[31]  *Hipp*, 252 F.3d at 1218; *Espinoza*, 2014 U.S. Dist. LEXIS 150775, at *6.  If so, the court *conditionally* certifies the FLSA collective.  *See id.*

### C.  The Similarly Situated Requirement and Plaintiffs' Low Burden.

The key factor for the district court's consideration is whether the employees are "similarly situated."  *Hipp,* 252 F.3d at 1218; *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008).  At the conditional certification stage, a plaintiff need only show a reasonable basis for their claims and the existence of other similarly situated employees.  *Morgan*, 551 F.3d at 1260.  Because the court has minimal evidence at this stage, this determination is made using a fairly lenient standard, and "typically results" in conditional certification of a representative class.  *Hipp*, 252 F.3d at 1218; *Mohamed*, 2018 U.S. Dist. LEXIS 228046, at *4.  "The Eleventh Circuit has noted that when considering a motion for conditional certification, a court . . . generally has

---

[31]      The second step, following discovery, allows the Court to make a factual determinations as to the merits of the claims based upon full discovery.  *Hipp*, 252 F.3d at 1218.

'minimal evidence' and the typical result is that the motion is granted." *Reyes v. AT&T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1331-32 (S.D. Fla. 2010) (citing *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) (quoting *Hipp*, 252 F.3d at 1216).

To satisfy the initial modest burden, "plaintiff[s] need only show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217; *see also Morgan*, 551 F.3d at 1273. The similarly situated requirement is more elastic and less stringent than the requirements of Rule 23 (as to class actions), Rule 30 (as to joinder), and Rule 42 (as to severance). *See Grayson v. K-Mart Corp.*, 79 F. 3d 1086, 1095 (11th Cir. 1996).

### D. Evidence of a Common Policy.

FLSA plaintiffs also can show that they are similarly situated by demonstrating a common policy to which they were subjected; however, evidence of a common policy is **not** required for conditional certification. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir 1996) ("a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)"); *Alequin v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 99458, at *21 (S.D. Fla. July 12, 2013) ("Plaintiffs at the conditional-certification stage are therefore not required to demonstrate a unified, explicit scheme of FLSA violations, but rather must show only that they are similarly situated with respect to general workplace policies and practices."); *see also Wallen v. Svensk Mgmt.*, 2021 U.S. Dist. LEXIS 120656, at *11 (S.D. Fla. Mar. 22, 2021) (granting conditional certification where defendants' argued plaintiffs "failed to provide any evidence that [d]efendants actually have a policy that results in unpaid overtime"). Given this, where, as here, Plaintiffs choose to present evidence of a common policy to demonstrate that the members of a putative FLSA collective are similarly situated (even though such evidence is not required), they are **not** required at this early stage to *prove* to unlawfulness of the policy, as Defendants erroneously have suggested (ECF No. 42 at 2, 11-12). *Wright*, 2020 U.S. Dist. LEXIS 250713, at *7 ("the focus of the court's inquiry at this stage is not on whether there has been an actual violation of law . . ."); *Jackson*, 181 F.Supp.3d at 1057 (the court need not "reach the merits issue of whether there *actually* was a common wage policy or plan, when Plaintiff has submitted enough in the way of evidence to warrant conditional certification.") (emphasis in original).

In addition, the fact that the common policy alleged by Plaintiffs contravenes Defendants' written policy does not defeat conditional certification. "[T]he mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides

countervailing evidence of a common policy of not paying for overtime." *Devries*, 2014 U.S. Dist. LEXIS 15862, *21-22 (citations omitted); *Jewell v. Aaron's, Inc*., 2012 U.S. Dist. LEXIS 92285, at **25-26 (N.D. Ga. June 28, 2012) ("Conditional certification is appropriate even though the plaintiffs allege that the FLSA violations were caused by a widespread *de facto policy* carried out by individual managers." (citations omitted)) (collecting cases). Evidence of a *de facto* "policy-to-violate-the-written-policy" will support conditional certification. *Devries*, 2014 U.S. Dist. LEXIS 15862, at **21-22 (granting conditional certification where, despite defendants' "written policy to pay overtime, [plaintiffs' alleged defendants] maintained a *de facto* 'off-the-clock' overtime policy and practice of having [employees] work overtime, preventing them from recording their overtime hours, and/or preventing them from receiving compensation for overtime actually worked."); *Jewell*, 2012 U.S. Dist. LEXIS 92285 at **25-26. Written policies regarding overtime "are insufficient to defeat . . . conditional certification because an employer's responsibility under the FLSA extends beyond merely promulgating rules to actually enforcing them." *Devries*, 2014 U.S. Dist. LEXIS 15862, at *22.

### E. The Court's Considerations at the Conditional Certification Stage are Narrow.

The Court's inquiry at the conditional certification stage is limited. *Wright*, 2020 U.S. Dist. LEXIS 250713, at *7 ("the focus of the court's inquiry at this stage is . . . whether the proposed plaintiffs are similarly situated . . ."). In considering conditional certification, the court should not engage in the merits of the claims or defenses, make credibility determinations, or conduct individualized inquiries. *Hipp,* 252 F.3d at 1219 (rejecting defendant's contention that each potential class member was unique and required an individual analysis of their working conditions); *Wallen*, 2021 U.S. Dist. LEXIS 120656, at *11 ("the Court is also unpersuaded by Defendants' argument that a collective action in this case would be unmanageable because it would require fact-specific individualized inquiries into liability, affirmative defenses, and damages for each putative plaintiff."); *Wright*, 2020 U.S. Dist. LEXIS 250713, at *6 ("The Court Will Not Determine Issues of Credibility, Make Individual Factual Inquiries, Nor Address the Merits at This Stage") (capitalization in original"); *Peña v. Handy Wash, Inc*., 28 F. Supp. 3d 1289, 1300 (S.D. Fla. 2014) ("[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," at conditional certification stage (citations omitted)); *Devries*, 2014 U.S. Dist. LEXIS 15862, at *24 (same).

Similarly, the court does not consider the viability of any exemptions asserted as affirmative defenses. *Wallen*, 2021 U.S. Dist. LEXIS 120656, at *13 (citations omitted).  By their nature, exemptions go to the merits of the case and as such are not properly considered at the conditional certification stage.  *Maar v. Beall's, Inc.*, 2016 U.S. Dist. LEXIS 203198, at **17-18 (S.D. Fla.  Nov. 23, 2016) (citations omitted).  In addition, as several courts have noted, classifying all employees working in a particular position as exempt actually bolsters the claims that they are similarly situated.  *Reyes v. AT&T Mobility Servs. LLC*, 801 F. Supp. 2d 1350, 1361 (S.D. Fla. 2011) (citations omitted).

Finally, the Court does not consider competing evidence, which would impermissibly engage the merits.  *See Reyes*, 801 F. Supp. 2d at 1358 (conditional certification of collective actions "shuns credibility battles at the first stage.").  Competing evidence includes counter-declaration, typically from current employees often described as "happy camper" evidence. *Metzler v. Case No Med. Mgmt. Int'l, Inc.*, 2020 U.S. Dist. LEXIS 62176, at **15-16 (M.D. Fla. Mar. 4, 2020) (citations omitted).  Rather, the merits of Plaintiffs' claims are not considered until the decertification stage of the case.  *Reyes*, 801 F. Supp. 2d at 1358.

## IV.   PLAINTIFFS HAVE SATISFIED THEIR LENIENT BURDEN FOR CONDITIONAL CERTIFICATION.

### A.  Plaintiffs and the Members of the Loan Officer Collective and the Loan Processor Collective are Similarly Situated.

The lenient standard applies here since this case is in its early stages and the parties have not engaged in meaningful discovery.  *Devries*, 2014 U.S. Dist. LEXIS 15862, at *13-14. Plaintiffs satisfy their minimal burden at this early stage to demonstrate that Loan Officers and Loan Processors at Defendants' three locations in the State of Florida are similarly situated. Plaintiffs have submitted sworn statements from seven Florida-based Plaintiffs (three Loan Officers and four Loan Processors) who worked across Defendants' its three Florida offices, with Loan Officers attesting to their first-hand knowledge of Loan Officers *and* Loan Processers, and vice versa.[32]   Plaintiffs also have submitted four additional declarations from non-Florida witnesses who further substantiate Plaintiffs' declarations with respect to Defendants'

---

[32]      **Loan Officers**: Cossaboom Decl. ¶ 1 (Tampa); Hatch Decl. ¶ 1 (West Palm Beach); Carlisle Decl. ¶ 1 (Orlando). **Loan Processors**: Pettry Decl. ¶ 1 (Tampa and Orlando); Gaines Decl. ¶ 1 (Orlando); Gates Decl. ¶ 1 (Orlando).

companywide policies, practices, and treatment, and resulting FLSA violations.[33]  This evidence demonstrates that the members of the Loan Officer Collective, as well as the Loan Processor Collective, are similarly situated in that they all have the same (or substantially similar) duties, compensation, classification (non-exempt, overtime eligible), and training.  *See supra* Sec. II(B)(1).

In addition, both Loan Officers and Loan Processors throughout the State of Florida have the same job description for their respective positions.  Exs. 2, 3.  Job descriptions are probative in establishing that the putative FLSA collective is similarly situated.  *See Morgan*, 551 F.3d at 1245; *see also Joseph v. Family Pres. Servs. of Florida, Inc*., 2011 U.S. Dist. LEXIS 50120, at *4 (S.D. Fla. May 10, 2011) (job descriptions probative of similarly situated); *Pendlebury v. Starbucks Coffee Co*., 518 F. Supp. 2d 1345, 1352 n.10 (S.D. Fla. 2007) (uniform job descriptions relevant to finding that plaintiffs were similarly situated - even under the more rigorous standards for decertification).

Finally, both members of the Loan Officer Collective and the Loan Processor Collective are subject to Defendants' policy whereby they are not permitted to record (and therefore are not compensated for) all of the hours they work over 40 in a work week.  *See supra* Sec. II(B)(2)-(4).  Additionally, via their sworn statements Plaintiffs have submitted documentary evidence supporting their accounts by demonstrating their off-the-clock work and, while not necessary at this stage, Defendants' knowledge of same.[34]

Plaintiffs' evidence easily satisfies Plaintiffs' lenient burden, as it is equal to or surpasses the evidence found sufficient in comparable cases.  *Devries*, 2014 U.S. Dist. LEXIS 15862, **19-20 (granting conditional certification where defendant only allowed plaintiffs to record 40 hours per week based upon testimony of five plaintiffs); *Lara*, 2015 U.S. Dist. LEXIS 105981, at **14-

---

[33]   **Loan Officers**: Tapscott Decl.; Gardner Decl.; Jenkins Decl.  **Loan Processors**: Hughes Decl.

[34]   **Loan Officers**: Hatch Decl. ¶ 12, Exs. A and B (emails reflecting off-the-clock, uncompensated overtime work); *see also* Gardner Decl. ¶ 13, Ex. A (email to Defendants' CEO complaining of off-the-clock, uncompensated overtime work); Jenkins Decl. ¶ 11, Ex. A (emails with supervisor reflecting off-the-clock, uncompensated overtime work).  **Loan Processors**: Pettry Decl. ¶ 15, Ex. A (contemporaneous planner reflecting off-the-clock, uncompensated work, in some instances specifically reported to supervisors); Gates Decl. ¶ 9, Ex. A (text messages with supervisor reflecting off-the-clock, uncompensated work); *see also* Hughes Decl. ¶ 9, Exs. A, B (same).

15 (same, based upon four declarations, ECF No. 39-1); *Jackson*, 181 F.Supp.3d at 1048 (same, based upon testimony from five declarants); *Eleazier*, 2014 U.S. Dist. LEXIS 203888, at *5 (same, based upon three declarations); *see, also, Sutherland v. Harbour Rest. Partners, LLC*, 2016 U.S. Dist. LEXIS 132590, at **2-3, **6-7 (S.D. Fla. Sept. 23, 2020) (granting conditional certification for off-the-clock claims based upon declaration of named plaintiff and the consents to join of four opt-in plaintiffs regarding compensation and duties); *Mohamed*, 2018 U.S. Dist. LEXIS 228046, at *9, 10 (finding plaintiffs to be similarly situated where they "submitted sufficient evidence of systemic issues regarding improper compensation for 'off the clock' employee work performed that could result in FLSA violations," including four affidavits from plaintiffs and opt-in plaintiffs); *Reese v. Kimberly Credit Counseling*, 2006 U.S. Dist. LEXIS 111311, at *7-8 (S.D. Fla. Nov. 21, 2006) (granting conditional certification for off-the-clock claims based upon allegations of complaint and named plaintiff's declaration).

### B. Additional Loan Officers and Loan Processors Are Interested in Participating in This Matter.

In the Eleventh Circuit, for conditional certification Plaintiffs also must demonstrate that other employees desire to opt into the case. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Evidence of other employees who desire to opt in may be based on affidavits and other testimony, as well as consents to join.  *See Vondriska v. Premier Mortgage Funding, Inc.,* 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007); *see also King v. CVS/Caremark Corp.,* 2008 U.S. Dist. LEXIS 99023, *21 (S.D. Fla. Nov. 24, 2008).   "While Plaintiffs bear the burden of showing that there are potential opt-ins, that burden is not onerous."  *Espinoza*, 2014 U.S. Dist. LEXIS 150775, at *6 (citations omitted).  "The existence of *just one* other co-worker who desires to join in is sufficient to raise the Plaintiff's contention beyond one of pure speculation." *Id.* (collecting cases) (emphasis in original) (internal quotations and citations omitted).

Plaintiffs have submitted evidence that other Loan Officers and Loan Processors would be interested in joining this case.  Plaintiffs not only provide sworn statements from three Loan Officers and four Loan Processors who are interested and have already joined, but they have also specifically identified by name an *additional* ten Florida-based Loan Officers and eight Florida-based Loan Processors with whom they discussed Defendants' unlawful policy and who may be

interested in joining.[35]  *Joseph v. Family Preservation Services of Florida, Inc.,* 2011 U.S. Dist. LEXIS 50120, at *12-13 (S.D. Fla. May 10, 2011) (finding it "significant" that plaintiffs affidavits noted their belief that other individuals will join if they received notice).  Moreover, it is reasonable to assume that where, as here, there are similarly situated employees who are alleged to have experienced the same FLSA violations, these potential plaintiffs would join the lawsuit if given notice of it.  *See Sealy v. Keiser Sch., Inc.,* 2011 U.S. Dist. LEXIS 152369, at *11-12 (S.D. Fla. Nov. 8, 2011) (explaining evidence of centralized policies with respect to all similarly situated employees indicate that it is "probable" those similarly situated employees would join if provided notice) (citations omitted); *Henderson v. Holiday CVS, LLC*, 2010 U.S. Dist. LEXIS 53604, at *11 (S.D. Fla. May 10, 2010) (relying on the joinder of opt-ins to demonstrate the interest in others to support conditional certification).

Based upon the precedent in this Circuit, Plaintiffs unquestionably have met their burden of showing they are similarly situated with the putative collective and that others are likely to join if given notice and the opportunity to do so.

*****

For these reasons, Plaintiffs have satisfied all of the Eleventh Circuit requirements and accordingly the Court should conditionally certify the Loan Officer Collective and the Loan Processor Collective.

## V. THE COURT SHOULD AUTHORIZE NOTICE TO THE PROPOSED FLSA COLLECTIVE

### A.     The Proposed Notice is Accurate and Informative.

Plaintiffs' proposed notice will provide Loan Officers and Loan Processors with an accurate description of this lawsuit, their rights under the FLSA, and who is eligible to join,[36] (*see*

---

[35]    **Loan Officers**: Cossaboom Decl. ¶ 21; Hatch Decl. ¶ 22; Carlisle Decl. ¶ 21. **Loan Processors**: Pettry Decl. ¶ 22; Gaines Decl. ¶ 19; Gates Decl. ¶ 21; Leon Rogs. 3.

[36]    Plaintiffs seek to send notice to all putative plaintiffs in both the Loan Officer Collective and Loan Processor Collective, and notably, only those who have potential claims under the FLSA for hours worked over 40 in a workweek are invited to join.  The language in Plaintiffs' proposed, respective, notices states, "You are eligible to join if you worked as a Loan Officer for Defendants at any time on or after Mach 31, 2018 and if during such time there were occasions you worked over 40 hours in a workweek and were not paid an overtime premium for some or all of that overtime worked," (*See* Loan Officer Notice, Ex. 7), and  "You are eligible to join if you worked

*Hoffman-LaRoche*, 493 U.S. at 172 (requiring that notice be "timely, accurate, and informative"), and is substantially similar to those approved in the Southern District of Florida. *See e.g.*, *Wright*, 2020 U.S. Dist. LEXIS 250713, at *20-21; *Devries*, 2014 U.S. Dist. LEXIS 15862, at *24; *Henderson*, 2010 U.S. Dist. LEXIS 53604, at *11.

Plaintiffs request that the Court authorize them to provide notice by (1) mail, (2) email, (3) text, and (4) job site positing, with Plaintiffs proposed Consent to Join Form to be issued along with the mail and e-mail notices. (*See* Loan Officer and Loan Processor Notices, Exs. 7, 8 (to be issued via mail, email, and posting), Consent to Join, Ex. 9.) Plaintiffs also request that they be permitted to create a website posting the notice where recipients may electronically submit their Consents to Join. These methods will ensure the likelihood that all putative plaintiffs are reached as soon as possible. Notice through these methods is commonly approved by courts this district. *See, e.g.*, *Aguiar v. M.J. Peter & Assocs.*, 2020 U.S. Dist. LEXIS 253390, at *7 (S.D. Fla. Sept. 10, 2020) (mail, email, text, posting, and website); *Rosell v. VMSB, LLC*, 2020 U.S. Dist. LEXIS 245601, at *14-15 (S.D. Fla. July 7, 2020) (mail, email, and posting of notice approved); *Maar v. Beall's, Inc.*, U.S. Dist. LEXIS 203198, at *20 (S.D. Fla. Nov. 23, 2016) (mail, email and posting); *Alequin v. Darden Restaurants, Inc.*, 2013 U.S. Dist. LEXIS 108341, at *2 (S.D. Fla. July 31, 2013) (mail and email); *see also Allen v. Hartford Fire Ins. Co.,* 2017 U.S. Dist. LEXIS 136504, at *27-29 (M.D. Fla. Aug. 25, 2017) (mail, email, posting); *Brown v. Discrete Wireless, Inc.*, 2014 U.S. Dist. LEXIS 161939, at *8-9 (M.D. Fla. Nov. 19, 2014) (web posting).

In addition, a reminder notice should be issued by mail and e-mail to putative Plaintiffs half-way through the opt-in period. (*See* Reminder Notice for, Ex. 10.) A reminder notice reminds people of the upcoming deadline to ensure that if they wish to join, they do so in a timely manner. *See, e.g.*, *Wright*, 2020 U.S. Dist. LEXIS 250713, at *20-21; *Collado v. J. & G. Transp., Inc*., 2014 U.S. Dist. LEXIS 152441, at *15 (S.D. Fla. Oct. 23, 2014).

Plaintiffs request a 60-day opt-in period, which provides a reasonable time for putative plaintiffs to receive notice and join, and is consistent with the practices in this District. *Harapeti v. CBS TV Stations, Inc*., 2020 U.S. Dist. LEXIS 242093, at *23 (S.D. Fla. Dec. 21, 2020); *Wright*, 2020 U.S. Dist. LEXIS 250713, at *21.

---

as a Loan Processor for Defendants at any time on or after April 9, 2018 and if during such time there were occasions you worked over 40 hours in a workweek and were not paid an overtime premium for some or all of that overtime worked." Loan Processor Notice, Ex. 8.

**C.     The Court Should Order Defendants to Produce the Names and Contact Information for all Members of Both FLSA Collectives.**

Finally, the Court should order Defendants to provide Plaintiffs a list of the members of both FLSA Collectives, as well as their contact information, within fourteen days of the Court's order granting this motion.  The identification of these individuals is necessary for Plaintiffs to issue notice of the action.  *See Hoffmann-La Roche*, 493 U.S. at 170.

Plaintiffs request that Defendant be required to produce a list of all Loan Officers and Loan Processors, with their (1) full name, (2) last-known address, (3) cell-phone number, (4) last-known personal email address, and (5) last four digits of their social security number.[37]  This information is routinely ordered to facilitate notice.  *See Reyes v. Carnival Corp.*, 2005 U.S. Dist. LEXIS 11948, at *27; *Florence v. Deli Mgmt.*, 2019 U.S. Dist. LEXIS 4379, at *9-10 (N.D. Ga. Jan. 9, 2019); *Martin v. Budd Props., Inc*., 2018 U.S. Dist. LEXIS 228211, at *13 (M.D. Ga. Apr. 27, 2018).

**CONCLUSION**

Plaintiffs have met their lenient burden of demonstrating that they and members of the Loan Officer and Loan Processor Collectives are similarly situated and that others similarly situated will join if provided notice.  Accordingly, Plaintiffs respectfully request that the Court enter an Order: (a) conditionally certifying the Loan Officer Collective and the Loan Processor Collective; (b) requiring Defendants to produce within 14 days a list of all Loan Officers and Loan Processors in the putative collective in an electronic or computer-readable format with their full name, last-known address, cell-phone number, last-known personal email address, and last four digits of their social security number; and (c) authorizing Notice be sent in the form and manner requested.

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to S.D. Fla. Local Rule 7.1 Plaintiffs conferred with Defendants regarding the relief requested herein.  Defendants oppose this Motion.

---

[37]     Partial social security numbers are useful because contact information may be outdated. They help to verify current contact information and aid in identifying alternate addresses for potential collective members whose notices are returned because of an incorrect address.  In the alternative, Plaintiffs request that if any notices are returned as undeliverable and Plaintiffs' counsel cannot locate an alternate address, then Defendants should provide Plaintiffs' counsel with the last four digits of the putative plaintiff's social security number within three days of the request.

Dated: October 7, 2021
       Boca Raton, Florida

Respectfully submitted,


*/s/ Gregg I. Shavitz*
Gregg I. Shavitz
Paolo C. Meireles
Logan A. Pardell
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
pmeireles@shavitzlaw.com
gshavitz@shavitzlaw.com
lpardell@shavitzlaw.com

Michele R. Fisher (*pro hac vice* admitted)
Kayla M. Kienzle (*pro hac vice* admitted)
**NICHOLS KASTER, PLLP**
80 South 8th Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile:(612) 338-4878
fisher@nka.com
kkienzle@nka.com

***Attorneys for Plaintiffs and the Proposed
FLSA Collective***

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on **October 7, 2021**. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

*/s/ Paolo C. Meireles*
Paolo C. Meireles

## SERVICE LIST

**SEYFARTH SHAW LLP**
Kevin M. Young
kyoung@seyfarth.com
Florida Bar No. 114151
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309
(404) 885-6697

Barry J. Miller
bmiller@seyfarth.com
Hillary J. Massey
hmassey@seyfarth.com
Two Seaport Lane, Ste. 300
Boston, MA 02210
(617) 946-4800

*Attorneys for Defendants*