UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MELISSA COSSABOOM f/k/a MELISSA COLLINS, ANN ADAIR HATCH, and JOEL HUGHES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br> -against-<br><br>NVR, INC. and NVR MORTGAGE FINANCE, INC.,<br><br>    Defendants. | Case No. 9:21-cv-80627-AMC |

**DECLARATION OF CHRISTOPHER GATES**

1.  I was employed by NVR, Inc. and/or NVR Mortgage Finance, Inc. ("NVR") from approximately April 2018 to March 2020 as a Loan Employee.[1]  I was employed as a Loan Processor at NVR's location in Orlando, Florida.  I worked with approximately 7 or 8 Loan Officers and 11 Loan Processors at that location.

2.  As a Loan Employee, I was classified as non-exempt and eligible to receive overtime pay.  It is my understanding that all Loan Employees are classified as non-exempt and eligible to receive overtime pay.

**Duties as a Loan Employee**

3.  As a Loan Employee, my job was to assist NVR homebuyers with the mortgage application process.  My duties generally included speaking with customers to collect the information required by NVR for a loan, collecting required documents, and submitting the loan paperwork to NVR's underwriting department for approval.

---

[1] "Loan Employee" means Loan Officer or Loan Processor.

4. When I was hired, I participated in training. There were approximately 20 Loan Employees from various locations at that training. I understand that all Loan Employees undergo similar training.

**Off-the-Clock Work**

5. As a Loan Employee, NVR typically scheduled me to work 40 hours per week. My typical scheduled hours were 7:00 a.m. or 7:30 a.m. to 3:30 p.m. or 4:00 p.m., Monday through Friday, with a scheduled 30-minute uncompensated meal break.

6. Even though I was typically scheduled to work 40-hour workweeks, I regularly worked more than 40 hours per week and through uncompensated meal breaks. For example, I would stay beyond my scheduled shift and would occasionally work from home in the evenings once I left the office for the day.

7. Including my time worked during normal business hours, time worked outside of my scheduled work hours, and time worked during unpaid meal breaks, I estimate that I typically worked an average of 45 to 55 hours per week throughout my employment with NVR. NVR's pay records should reflect the number of hours for which it paid me, but not the total hours I actually worked.

8. Some of the work I performed for NVR was from home. NVR provided Loan Employees with company-issued laptops for work performed out of the office. In fact, NVR provided me with a company-issued laptop so that I could continue performing work from home. For example, because I was responsible for connecting with home buyers at various times throughout the day and evening at their convenience to collect necessary information and documentation to process their loan, I often had to work from home after regular business hours to facilitate NVR's customers' schedules.

9. My supervisor(s), including Erika Matz (Operations Manager), communicated with me via phone calls and texts outside of regularly scheduled work hours regarding work-related matters. For example, attached is Exhibit A, a true and correct copy of text messages between my supervisor, Erika Matz (Operations Manager), and me, which were sent beyond my scheduled work hours for which I do not believe I was paid.

10. The performance demands NVR placed on Loan Employees required that I perform work outside of my scheduled 40-hour workweek. While I knew I was unfairly denied overtime for the off-the-clock overtime hours that I was working, these additional off-the-clock overtime hours were necessary to meet the demands of my job and maintain employment.

**Timekeeping and Unpaid Overtime**

11. NVR required me and other Loan Employees to record hours using timesheets. Absent occasional circumstances in which overtime was pre-approved, NVR prohibited us from recording more than 40 hours. Additionally, we were prohibited from reflecting on our timesheets the time we regularly worked during uncompensated meal breaks.

12. My supervisor, Erika Matz, would advise me to leave the office early on Fridays to "avoid working overtime," but then would assign me work to be completed by Monday morning. Ms. Matz made it clear that I was required to finish this work by the given deadline or else I could be disciplined, but that I also would be subject to discipline if I recorded overtime hours worked. Thus, Ms. Matz made it clear that I had to complete these work assignments off-the-clock. Also, Ms. Matz was well aware I worked past my scheduled hours, as discussed above.

13. On occasion I tried to accurately record all of the hours I worked. During weeks I accurately recorded my hours, Ms. Matz (my supervisor) rejected my timesheet and instructed me to adjust my recorded hours so they would fall under 40 hours per week. My timesheet would be approved once I adjusted my recorded hours below 40.

14. I spoke with Ms. Matz on several occasions about not being compensated for overtime hours worked. On one occasion, she told me that I was not eligible to receive overtime pay because I had previously used vacation time to cover time I had off due to medical issues. In other instances, she told me that I was not eligible to receive overtime pay because the hours were not pre-approved.

15. I understood that NVR maintained labor budgets to control the amount it paid employees. As a result, it was NVR's policy to prohibit Loan Employees from recording overtime hours without approval.

16. Approval for overtime was rarely granted. Even in the limited instances in which NVR pre-approved recording overtime hours, the number of overtime hours NVR approved was generally inadequate to cover all the overtime hours that NVR required that I and other Loan Employees actually worked. Thus, even during those limited weeks in which NVR permitted me to record overtime, I was routinely still required to work additional uncompensated overtime hours to meet NVR's demands.

17. I believed that I would have been reprimanded or otherwise disciplined if I recorded all the hours I worked, because recording more than 40 hours per week without approval was in violation of NVR's policy, and pre-approval was rare, difficult to obtain, and generally insufficient to cover all hours worked.

18. I also believed that I would have been reprimanded or otherwise disciplined if I failed to complete all the work expected of me even when I was unable to complete that work in 40 hours or less per week.

**Other Loan Employees Similar to Me**

19. Other Loan Employees performed similar duties as me. I know this because I worked alongside other Loan Employees in Orlando, Florida such as Faran Gaines (Loan

Processor) and Jessica Nations (Loan Processor) and I witnessed them performing the same job duties as me. Further, we participated in conference calls during which we were instructed on NVR's expectations of us, regardless of location.

20. Other Loan Employees, including Faran Gaines and Jessica Nations, regularly worked more than 40 hours per workweek and did not receive overtime pay for all the hours that they worked in excess of 40. I know this because we were all on the same team and we talked amongst ourselves about working unpaid overtime and because myself and other Loan Employees would usually arrive at the same time each day and we would frequently be at the office after business hours working late together.

21. I believe other Loan Employees, including Faran Gaines and Jessica Nations, would be interested in joining this case if they were made aware of their right to receive overtime pay. However, Loan Employees may also be afraid to join because they may be worried about retaliation and losing their job.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 06/04/2021 _____

_____
Signature

# EXHIBIT A



